IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LINDA KELSO, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>JO ANNE BARNHART, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 06-0267-CV-W-ODS |

<u>ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION
DENYING DISABILITY INSURANCE BENEFITS</u>

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her application for supplemental security income benefits and disability benefits under the Social Security Act. For the following reasons, the Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born in October 1959 and completed the 10th grade. She became a Certified Nursing Assistant ("CNA") and began work in that capacity in June 1987. She changed employers on a few occasions, but worked continuously until October or November 2003. In 1998, she began experiencing pain along the sciatic nerve on her right side. The Record includes medical records starting in January 2003, but they confirm Plaintiff experienced flare-ups off and on and occasionally since 1998 and occasionally received treatment. On January 6, 2003, Plaintiff went to the emergency room complaining of moderate and constant back pain and requesting medication; she was diagnosed with sciatica and prescribed Flexeril and Motrin and instructed to decrease her activity for a few days and was provided a written excuse for her employer. R. at 124-25. On May 5, Plaintiff reported the pain was now only "intermittent" and the prescriptions for Flexeril and Motrin were continued. R. at 127-28.

She returned on June 26 and reported she was experiencing pain and numbness in her lower back that was moderate and constant. No tenderness was noted and her gait was normal; nonetheless, Plaintiff's prescriptions were continued and she was provided with a work excuse. R. at 130-32. On July 17, Plaintiff reported another flare-up and declared she "has had this off/on for years and states that this is just her usual pain which is helped by ibuprofen and flexeril." R. at 164.

Plaintiff testified that she last worked on October 16, 2003. While at work she fell down due to pain, and her supervisor sent her to the trauma center. She testified she was unable to walk for a week and a half. R. at 29. However, in a visit to her doctor (Dr. Rebecca Klontz) on October 30, Plaintiff described the incident as another typical flare-up, re-confirmed that ibuprofen and flexeril effectively addressed her problem, and requested refills of those prescriptions. R. at 162. On November 16, Plaintiff sought another refill of her prescriptions and also requested a work excuse; the Record does not indicate whether this latter request was honored. R. at 161. At an unestablished point in time, Plaintiff's employment ended; it is not clear whether she was terminated or simply never returned to work. Compare R. at 30-31 (indicating she was terminated) with R. at 32-33 (indicating she did not obtain unemployment benefits because she failed to come to work).

On January 8, 2004, Plaintiff reported a "stabbing buttock pain that radiates down to her knee. . . . She has been on ibuprofen and flexeril which help her buttock pain. . . . She has lost her job because of being unable to work secondary to pain." Prescriptions for ibuprofen and flexeril were refilled. R. at 142-44. A nerve conduction test performed later that month "show[ed] no neuropathic changes in the nerves and muscles tested." R. at 141. On March 11, Doctor Klontz wrote a short letter apparently designed to help Plaintiff obtain housing assistance that stated Plaintiff "has a painful and debilitating condition that keeps her from working at her previous job as a CNA. I do not anticipate that she will be able to return to employment in the next six months. She would benefit from help with housing." R. at 148.

An MRI was conducted on March 24, 2004, revealing "a small anular tear" and mild disc bulge at L5-S1 and a mild bulge at L4-L5. R. at 220-21. On June 1, Dr. Klontz

described Plaintiff's situation as "frustrating [because] she is complying with medical therapy and still not responding." She noted Plaintiff's MRI was "essentially negative" in that it ruled out a neurological cause for Plaintiff's complaints. Dr. Klontz refilled the prescriptions for ibuprofen and flexeril and referred Plaintiff to neurology. R. at 212-15. Plaintiff saw a consulting neurologist on July 14, whose testing revealed "no significant pathology to explain symptoms," "no evidence of sciatica," and "no evidence to support neuropathy." The report also suggests "symptom magnification" on Plaintiff's part. R. at 211. In describing her symptoms to the consulting neurologist, Plaintiff stated that she experienced flare-ups of pain weekly. R. at 207.

     Meanwhile, Dr. Mary Brothers performed a consultative examination in June 2004. Plaintiff reported a burning pain and numbness along the right sciatic nerve extending from the buttock to an area just above the ankle, making it uncomfortable to sit, walk and (at times) to have anything touch her foot. R. at 171. "She was ok until recently, but for the past four to five months she has been symptomatic again." R. at 172. Dr. Brothers noted tenderness over the SI Joint and pain in the leg when pressure was applied to the sciatic notch, R. at 173, but x-rays demonstrated "[t]he SI joints look pretty good" and no remarkable findings. R. at 175. Dr. Brothers opined Plaintiff should use a cane, limit repeated bending at the waist, and limit herself to lifting ten to fifteen pounds frequently and twenty-five pounds occasionally. She also indicated Plaintiff could stand and walk for thirty to sixty minutes at a time but not more than four hours per day, sit for sixty minutes at a time but not more than four or five hours per day and needed the ability to change her position and posture regularly. R. at 177.

     Plaintiff next saw Dr. Klontz on November 2, 2004. Dr. Klontz reported Plaintiff "was significantly incapacitated when I last saw her (5 months ago) but has since done much better. She is having several pain free days a week. Is not needing to take medications every day. Still having a few flares a month. Applying for disability." R. at 193. Plaintiff was prescribed ibuprofen and flexeril for her pain, was prescribed Neurontin in place of Elavil (which had been prescribed at some time, apparently for pain although the Record is not clear) and was also referred to physical therapy "for

3

assistive device evaluation." R. at 195. The Record does not contain the results of that referral.[1]

During the administrative hearing on June 8, 2005, Plaintiff testified her medications make her sleepy but she has difficulty sleeping at night. R. at 33. She explained that she has days where she doesn't experience pain, depending on whether she takes her medication. Apparently, in order to alleviate the drowsiness caused by her medication, she will "skip a couple of days," but then the pain is so intense she can only lay in bed. However, the pain-free days correspond to the days she takes her medication. R. at 47-48. Plaintiff's daughters do the housework, but she goes shopping; when she does, she rides in a motorized cart. Plaintiff also testified Dr. Brothers arranged for her to obtain a permit to park in handicapped parking spaces. R. at 37. She estimated she could sit for two hours, stand for twenty to thirty minutes, or walk a block and a half before her back starts to bother her. R. at 40.

A Vocational Expert ("VE") also testified at the hearing. When asked to assume a person of Plaintiff's age, education, experience who was limited to sedentary work and no more than occasional climbing, bending, twisting, kneeling, reaching and crawling, the VE testified such a person could not perform their prior work as a CNA but could perform work as a cashier, surveillance system monitor, or information clerk. R. at 44-45. In the second hypothetical, the ALJ added a requirement that the individual have the option to sit or stand with the need to alternate between the two every two hours. The VE indicated such an individual could perform the jobs he previously identified, but reduced the number of cashier positions that would exist with those conditions. R. at 46. The third hypothetical added a restriction excluding repetitive work with the dominant arm; this condition eliminated all cashier positions. R. at 46. The fourth hypothetical added a need for the individual to miss work four times per month. The VE opined that such a person could not find any work in the national economy. R. at 46-47. In response to a question posed by Plaintiff's representative, the VE indicated

---

[1]At the hearing, Plaintiff testified she could not make arrangements to see the physical therapist until June 30, 2005.

4

a no job would allow a person to lie down for one to two hours on an unscheduled basis. R. at 47.

The ALJ found Plaintiff retains the residual functional capacity to lift and carry up to ten pounds occasionally and less than ten pounds frequently, sit up to six hours and stand or walk up to two hours during an eight hour workday, but each no more than two hours at a time. He also found Plaintiff could not perform repetitive work with her right, was precluded from climbing ladders, and could only occasionally stoop, bend, crawl, kneel or twist. R. at 19. In making these findings, the ALJ noted the treatment Plaintiff had received was not consistent with a disabling medical condition, and the medical records revealed that while Plaintiff was compliant with her doctors' instructions those same records revealed medication was effective in treating Plaintiff's pain. Moreover, the condition of which she complained had existed for a great many years, and during much of that time she was able to work. Nothing in the Record suggests her condition deteriorated; to the contrary, she consistently described her problem as the "typical" flare-up she was accustomed to experiencing. Based on his findings and the VE's testimony, the ALJ concluded Plaintiff is capable of performing work in the national economy. R. at 20-21.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might

5

accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

In arguing there is not substantial evidence in the record as a whole, Plaintiff first faults the ALJ for stating "[t]he record also includes statements from doctors suggesting that the claimant had exaggerated symptoms and limitations." R. at 20. Contrary to Plaintiff's assertion, there is evidence in the Record to this effect. R. at 211. Next, Plaintiff points to the March 11, 2004 letter from Dr. Klontz as proof that her condition worsened. There are several problems with this contention. First, this letter merely indicates – in a very conclusory manner – Dr. Klontz's belief Plaintiff could not return to her past work as a CNA. This opinion was never expressed by Dr. Klontz again. Second, the letter is contradicted – and the ALJ's finding is supported – by (among other things) Dr. Klontz's notes indicating Plaintiff told her the pain was essentially the same as she had experienced over the preceding years and that medication remained effective in treating the pain.

The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that she experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

The Court accepts Plaintiff's argument that her subjective complaints of pain cannot be discounted or ignored simply because they are not fully corroborated by objective medical evidence. However, Plaintiff's testimony is also contradicted by evidence in the record, including the statements described in the preceding paragraph, the statements to the neurologist indicating pain was not a daily occurrence, the statements indicating the medication was helpful, and the lack of any statements to doctors indicating the pain or the medications' side effects were as debilitating as she now contends. It should also be noted that in deriving Plaintiff's residual functional capacity, the ALJ incorporated virtually all of the limitations posited by Dr. Klontz and Dr. Brothers, neither of whom endorsed the extent of limitations described by Plaintiff or otherwise indicated she would be unable to work for a period of more than twelve months.

Finally, Plaintiff contends the ALJ's hypothetical questions were flawed because they did not incorporate her complaints of pain. The Record demonstrates otherwise. A hypothetical question does not incorporate the claimant's medical condition or complaints; it incorporates the claimant's functional limitations and capabilities. In other words, telling the VE Plaintiff experiences pain is not sufficient; the proper course (which was followed in this case) was to tell the VE Plaintiff's limitations on her ability to stand, sit, and so forth.

7

## III. CONCLUSION

For these reasons, the Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

                                              /s/ Ortrie D. Smith
                                              ORTRIE D. SMITH, JUDGE
DATE: October 31, 2006                UNITED STATES DISTRICT COURT

8

Case 4:06-cv-00267-ODS   Document 12   Filed 10/31/06   Page 8 of 8